# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| J.M. and<br>ESTATE OF DONTRE HAMILTON,<br><br>                                Plaintiffs,<br>v.<br><br>CITY OF MILWAUKEE and<br>CHRISTOPHER E. MANNEY,<br><br>                                Defendants. | Case No. 16-CV-507-JPS<br><br><br><br>**ORDER** |

### 1.    INTRODUCTION

On November 9, 2016, the plaintiffs filed a motion to compel compliance with a subpoena they issued to the City of Milwaukee Employees' Retirement System ("ERS"). (Docket #34). They have sought the complete disability claim file for the defendant Christopher E. Manney ("Manney"). Both Manney and the ERS[1] have opposed the motion. (Docket #38 and #39). Manney simultaneously moved to quash the subpoena. (Docket #38). For the reasons stated below, the motion to compel will be granted and the motion to quash will be denied.

### 2.    RELEVANT FACTS

In this action, the plaintiff alleges that Dontre Hamilton was killed by Manney on April 30, 2014, and that in doing so, both Manney and the City of Milwaukee violated various provisions of the Constitution. *See generally* (Docket #1). Based on the trauma of that incident, Manney later applied for

---

[1] ERS is also represented by the City of Milwaukee Attorney's Office. The City of Milwaukee itself has not offered any response or other motion related to the subpoena.

disability benefits with the ERS. (Docket #36-1). The ERS manages, *inter alia*, employee claims for disability benefits. (Docket #36-3).

The plaintiffs sought all documents related to that disability claim from Manney himself, but he claimed that they were irrelevant, and also that he did not have any such documents; they were all in the ERS's possession. (Docket #36-5 at 6). The plaintiffs then went to the ERS for the documents, serving a subpoena on it on September 22, 2016. (Docket #36-6). The ERS served objections to the subpoena on October 6, 2016, stating generally that many of the desired documents would not be produced because 1) they were subject to confidentiality rules and the psychotherapist-patient privilege, and 2) Wisconsin statute Section 146.82 prohibited disclosure of the records without Manney's consent. (Docket #36-7 at 2).

**3.     ANALYSIS**

Preliminarily, the Court notes that only Manney's opposition is applicable to the instant determination. Section 146.82 prohibits ERS from disclosing Manney's disability claim file unless, *inter alia*, there exists a court order compelling it to disclose the file. Wis. Stat. § 146.82(2)(a)(4). Thus, if the Court grants the motion to compel, ERS will be supplied with the necessary order. If the Court denies the motion, the issue becomes moot. Further, ERS itself does not seek to quash the subpoena on any of the grounds provided in Federal Rule of Civil Procedure ("FRCP") 45(d)(3)(A), so they lack any

continued interest in this conflict.[2] Manney, however, has requested that the subpoena be quashed. (Docket #35 at 1). The Court is left, then, with the issues of privilege and relevance raised by Manney and the plaintiffs. It will address the parties arguments thereon separately below.

### 3.1 Psychotherapist-Patient Privilege

In *Jaffee*, the United States Supreme Court first recognized the psychotherapist-patient privilege. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). It equated the privilege to other common-law testimonial privileges, such as attorney-client and spousal privileges. *Id.* at 9-10. The plaintiffs claim that Manney waived his claim to his psychotherapist-patient privilege by sharing his medical records with the ERS in order to obtain disability benefits. *Id.* at 15 n.14 ("Like other testimonial privileges, the patient may of course waive the protection.").

The parties characterize the dispute as one over "selective waiver." The plaintiffs contend that there can be no selective waiver of the psychotherapist-patient privilege; by disclosing his health care information to the ERS, Manney waived his psychotherapist-patient privilege entirely. They cite *Burden-Meeks*, decided in February 2003, in support. There, the Seventh Circuit held that with respect to the attorney-client privilege, "[k]nowing disclosure to a third party almost invariably surrenders the

---

[2]This also means that it does not matter whether ERS has standing to invoke the psychotherapist-patient privilege on Manney's behalf; Manney himself asserts it in his motion to quash. The plaintiffs appear to argue that Manney waived the privilege by failing to raise it in his discovery responses. They cite no law in support thereof, however. The Court will not address whether waiver occurred at that juncture without being provided legal support, and so continues on to the substance of the parties' arguments.

privilege with respect to the world at large; selective disclosure is not an option." *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003).

Manney believes the opposite—that the Seventh Circuit recognizes selective waiver of the psychotherapist-patient privilege. In support of his view, Manney cites *Dellwood Farms*, decided in October 1997. In *Dellwood Farms*, the court was faced with the federal government's invocation of "the 'law enforcement investigatory privilege,' a judge-fashioned evidentiary privilege." *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1124 (7th Cir. 1997). The government had played certain tape recordings it had created in a criminal investigation to lawyers for the company targeted by the investigation (to induce a guilty plea). *Id.* Private plaintiffs later filed civil suits against that company based on the same conduct which was the subject of the prosecution. *Id.* Those plaintiffs subpoenaed the tapes from the government, asserting that the government had waived its privilege by playing the tapes to the company's lawyers. *Id.*

*Dellwood Farms* stated that the law enforcement investigatory privilege was not absolute. *Id.* at 1125. The privilege was subject to balancing "the need of the litigant who is seeking privileged investigative materials [] against the harm to the government if the privilege is lifted[.]" *Id.* The court's holding, however, was focused on whether the government had waived its privilege. The court made a number of important notes on the waiver issue:

> The cases . . . generally reject a right of "selective" waiver, where, having voluntarily disclosed privileged information to one person, the party who made the disclosure asserts the privilege against another person who wants the information. And this is a selective-waiver case. Selective waiver must be distinguished from inadvertent disclosure, where a party mistakenly discloses information that it had intended to keep secret. Courts are somewhat less likely to find
Page 4 of 8

Case 2:16-cv-00507-JPS   Filed 12/15/16   Page 4 of 8   Document 41

waiver in such a case. Somewhere in between is "partial waiver," where disclosure of a part of a privileged document or set of such documents is argued to waive privilege in the rest of it. Partial waiver is not in issue here. Nor inadvertent waiver: the government does not argue that it did not intend to play the tapes for the outside directors' lawyers.

What selective and inadvertent (also partial) disclosure have in common, however, is that neither is waiver in the standard sense in which the word is used in the law: the deliberate relinquishment of a right. When "waiver" is found in either type of case, the inadvertent or the selective, it is in order to punish the person claiming the privilege for a mistake, rather than to prevent him from changing his mind and retracting a benefit that he had consciously granted to the person from whom he wants to retract it. In the case of selective disclosure, the courts feel, reasonably enough, that the possessor of the privileged information should have been more careful, as by obtaining an agreement by the person to whom they made the disclosure not to spread it further.

*Id.* at 1126-27 (citations omitted). The court found that waiver had not occurred, concluding that finding waiver in this instance would be excessive "punishment" to the government for disclosing the tapes to the company's lawyers. *Id.* at 1127.

The Court finds that Manney has waived his claim to the psychotherapist-patient privilege. The psychotherapist-patient privilege is a testimonial privilege which, as recognized by *Jaffee*, may be waived. As between *Burden-Meeks* and *Dellwood Farms*, the Court finds that *Burden-Meeks* is more apposite. *Burden-Meeks* deals with another common-law testimonial privilege, the attorney-client privilege, and its holding on selective waiver is clear. *Dellwood Farms* addresses a non-testimonial, judge-made privilege. This difference is buttressed by the absolute nature of the common-law testimonial privileges; *Jaffee* specifically rejected applying a balancing test to

Page 5 of 8

Case 2:16-cv-00507-JPS   Filed 12/15/16   Page 5 of 8   Document 41

the invocation of the psychotherapist-patient privilege. *Jaffee*, 518 U.S. at 17-18. The law enforcement investigatory privilege, to the contrary, explicitly includes a balancing component.

Further, as shown by the above quotation, *Dellwood Farms*' holdings are far from clear, seemingly rejecting selective waiver, but then applying it, and referencing the possibility of maintaining selective disclosure through use of a confidentiality agreement.[3] The parties did not cite, and the Court itself has not located, any Seventh Circuit opinion applying *Dellwood Farms*' selective waiver holding or otherwise discussing it. In fact, *Burden-Meeks* itself seems to undermine *Dellwood Farms*, by citing it as an example supporting its above-quoted holding. *Burden-Meeks*, 319 F.3d at 899 ("Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option. *See, e.g., Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126–27 (7th Cir.1997)[.]"). This suggests that just over five years after *Dellwood Farms*, the Court of Appeals itself interpreted the case as being generally against selective waiver.

In the absence of such clarification, the Court rests on the more analogous *Burden-Meeks* decision. Manney knowingly disclosed his healthcare information, including communications potentially protected by the psychotherapist-patient privilege, to a third-party, ERS. This surrendered the privilege and opened the door to the plaintiffs to obtain the disability claim file. *See Mukes v. City of Milwaukee*, No. 13-CV-1268-PP, 2015 WL 3823887 *3-6 (E.D. Wis. June 19, 2015) (holding that disclosure of

---

[3]In finding that *Burden-Meeks* controls, the Court does not reach the issue of whether the protections of Section 146.82 supply the necessary guarantee of confidentiality.

Page 6 of 8

Case 2:16-cv-00507-JPS   Filed 12/15/16   Page 6 of 8   Document 41

psychotherapy records to the ERS to obtain disability benefits waives the privilege, though not discussing *Dellwood Farms*).

### 3.2 Relevance

FRCP 26(b)(1)'s rule on the scope of discovery does not prohibit the requested subpoena. The Rule provides that discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense[.] Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The Court has already ruled that the information sought is non-privileged. Even with only a description of the claim file and documents contained therein, as provided by exhibits to the plaintiffs' motion, the Court finds that the file could contain relevant, though not necessarily admissible, information. *See* Fed. R. Civ. P. 26(b)(1). This may include information on Manney's physical and mental state prior to or during the April 30, 2014 incident, including any history of psychiatric care. Whether Manney's *post*-incident care is admissible at trial, his primary concern in his memorandum, is a matter for another day.

### 4. CONCLUSION

In light of the foregoing, the Court is constrained to grant the plaintiffs' motion to compel and deny Manney's motion to quash. The ERS must produce Manney's complete disability claim file in its possession in accordance with the plaintiffs' subpoena. It is now supplied with the order required to do so pursuant to Section 146.82.

Accordingly,

**IT IS ORDERED** that the plaintiffs' motion to compel (Docket #34) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Bernard J. Allen, Executive Director of the City of Milwaukee Employees' Retirement System, shall produce the

complete disability claim file for the defendant Christopher E. Manney in accordance with the plaintiffs' subpoena dated September 22, 2016 (Docket #36-6); and

**IT IS FURTHER ORDERED** that the defendant Christopher E. Manney's motion to quash (Docket #38) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 15th day of December, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge